# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION
## CIVIL ACTION NO. 4:17-CV-00091-HBB

CARL E. MOORE                                                                    PLAINTIFF

VS.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security                                                  DEFENDANT

## MEMORANDUM OPINION
## AND ORDER

## BACKGROUND

Before the Court is the complaint (DN 1) of Carl E. Moore ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 12) and Defendant (DN 13) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is reversed and this matter is remanded to the Commissioner for further proceedings.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 10). By Order entered October 5, 2017 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

1

<u>FINDINGS OF FACT</u>

Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income on March 5, 2014[1] (Tr. 206, 210). Plaintiff alleged that he became disabled on July 1, 2011 as a result of Left ankle fusion, learning disability, and a cataract in his left eye (Tr. 209, 235). Administrative Law Judge Marci P. Eaton ("ALJ") conducted a video hearing from Paducah, Kentucky on March 15, 2016 (Tr. 39). Plaintiff and his attorney, Sara Martin, participated from Owensboro, Kentucky (Tr. 39-41). Stephanie Barnes, a vocational expert, participated by telephone (<u>Id.</u>).

In a decision dated May 9, 2016, the ALJ concluded that Plaintiff was not disabled prior to April 1, 2015, but he became disabled on that date and has continued to be disabled through the date of the decision (Tr. 20). Notably, with regard to Plaintiff's DIB claim, the ALJ found that he was not under a disability within the meaning of the Social Security Act at any time through December 31, 2014, his date last insured (Tr. 22, 31).

The ALJ evaluated Plaintiff's adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 20-31). At the first step in the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date (<u>Id.</u>). At the second step, the ALJ determined that Plaintiff had the following "severe" impairments: left cataract and status post left ankle fusion (<u>Id.</u>). The ALJ also determined that Plaintiff's purported diabetes, gastroesophageal reflux disease/Barrett's esophagus, hyperlipidemia, migraine headaches, obesity, learning disorder, and left wrist impairment are "non-severe" impairments (Tr. 23-25). At the third step, the ALJ concluded that

_____

1, Both applications were protectively filed on December 20, 2013 (Tr. 20, 41).

Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 25).

At the fourth step, the ALJ made the following finding:

> After careful consideration of the entire record, the undersigned finds that since July 1, 2011, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: he can occasionally climb ramps or stairs; he should never climb ladders, ropes, or scaffolds; he can occasionally stoop, kneel, crouch, or crawl; he should avoid concentrated exposure to extreme cold or extreme heat; he should avoid concentrated exposure to wetness or humidity; and he should avoid concentrated exposure to vibrating equipment, moving machinery, and unprotected heights.

(Tr. 25). Relying on testimony from the vocational expert, the ALJ found since July 1, 2011, Plaintiff has been unable to perform any of his past relevant work (Tr. 29).

The ALJ proceeded to the fifth step where she determined that prior to April 1, 2015, Plaintiff was an individual closely approaching advanced age (Tr. 29). The ALJ noted that on April 1, 2015, Plaintiff's age category changed to an individual of advanced age (Id.). The ALJ found that Plaintiff had a limited education and was able to communicate in English (Tr. 30). The ALJ determined that prior to April 1, 2015, transferability of job skills was not material to the determination of disability and that after that date Plaintiff had not been able to transfer job skills to other occupations (Id.).

Relying on testimony from the vocational expert, the ALJ found that prior to April 1, 2015, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, considering his age, education, work experience, and residual functional capacity (Id.). The ALJ also found that beginning on April 1, 2015, there were not a significant number of jobs that existed in the national economy (Tr. 31). Therefore, the ALJ concluded that Plaintiff

was not disabled prior to April 1, 2015, but became disabled on that date and has continued to be disabled through the date of the decision, May 9, 2016 (Id.).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision. The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5).

<u>CONCLUSIONS OF LAW</u>

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695 (6th Cir. 1993); <u>Wyatt v. Sec'y of Health & Human Servs.</u>, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. <u>Landsaw v. Sec'y of Health & Human Servs.</u>, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." <u>Cotton</u>, 2 F.3d at 695 (quoting <u>Casey v. Sec'y of Health & Human Servs.</u>, 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case <i>de novo</i>, nor resolve conflicts in evidence, nor decide questions of credibility." <u>Cohen v. Sec'y of Health & Human Servs.</u>, 964 F.2d 524, 528 (6th Cir. 1992) (quoting <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); <i>see</i> 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered

the decision.  42 U.S.C. § 405(g); 20 C.F.R. § 404.981; <u>Cline v. Comm'r of Soc. Sec.</u>, 96 F.3d 146, 148 (6th Cir. 1996); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.  42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).  The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); <u>Barnhart v. Walton</u>, 535 U.S. 212, 214 (2002); <u>Abbott v. Sullivan</u>, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.  *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.  In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

5

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, at the fifth step, the ALJ found that Plaintiff was not disabled prior to April 1, 2015, but became disabled on that date.

## Challenged Findings

Although not expressly stated, the five arguments set forth in Plaintiff's memorandum suggest that he is either directly or indirectly challenging Finding Nos. 3, 5, 10, 12, and 13 (DN 12; DN 12-1 PageID # 627-39). One argument takes issue with the ALJ's finding that Plaintiff's learning disability is a non-severe impairment (Id.). Three arguments dispute whether substantial evidence supports the ALJ's residual functional capacity assessment ("RFC") (DN 12-1 PageID # 627-39). And, a fifth argument questions whether substantial evidence supports the ALJ's finding that jobs existed in significant numbers in the national economy (Id.). Plaintiff believes the ALJ should have found he became disabled on July 1, 2011 (Id.).

## A.

The Court will begin by addressing Plaintiff's fourth argument (DN 12). It challenges Finding No. 3 which pertains to the second step in the five step sequential evaluation process. Specifically, Plaintiff disagrees with the ALJ's determination that Plaintiff's learning disorder is a non-severe impairment (Tr. 22-24, Finding No. 3). In connection with this determination, the ALJ gave "great weight" to the opinions of the non-examining state agency psychologists, Lea Perritt, Ph.D., and Laura Cutler, Ph.D., who reviewed the record on May 28, 2014 and September

15, 2014, respectively (Id.). They both opined that Plaintiff did not have a medically determinable mental impairment (Tr. 24, citing Tr. 72-76, 98-102).

Plaintiff argues substantial evidence in the record does not support the ALJ's decision to give "great weight" to the opinions of Drs. Peritt and Cutler (DN 12-1 PageID # 636-37). Plaintiff is asserting the ALJ should have ordered a consultative psychological examination to develop the record regarding his IQ and intellectual abilities before the ALJ decided how much weight to assign to the opinions of Drs. Peritt and Cutler (Id.).

Defendant argues that Plaintiff, not the ALJ, had the burden of developing the record regarding the learning disorder (DN 13 PageID # 642-44). Further, the ALJ was not obligated to order a consultative psychological examination merely because Plaintiff claims that he has a learning disability (Id.).

The Court notes that Plaintiff has not cited any authority in support of his position that the ALJ should have ordered a consultative psychological evaluation to develop the record regarding his IQ and intellectual abilities. In special circumstances, where a claimant is not represented by counsel during the administrative proceeding, the Administrative Law Judge has a special duty to ensure that a full and fair administrative record is developed. *See* Tranddafir v. Comm'r of Soc. Sec., 58 F. App'x 113, 115 (6th Cir. 2003); Duncan v. Sec'y Health & Human Servs., 801 F.2d 847, 856 (6th Cir. 1986); Lashley v. Sec'y of Health & Human Servs., 708 F.2d 1048, 1051-52 (6th Cir. 1983). However, there are no special circumstances here because counsel represented Plaintiff during the administrative proceeding.

At the second step, the claimant has the burden of demonstrating that he has a "severe" impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); Higgs v. Bowen, 880 F.2d 860,

863 (6th Cir. 1988) (per curiam). To satisfy this burden, the claimant must show he suffers from a "medically determinable" physical or mental condition that satisfies the duration requirement (20 C.F.R. §§ 404.1509, 416.909) and "significantly limits" his ability to do one or more basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c); Social Security Ruling 96-3p; Social Security Ruling 96-4p; Higgs, 880 F.2d at 863. Notably, the claimant must present objective medical evidence (i.e., signs, symptoms, and laboratory findings) that demonstrates the existence of a physical or mental impairment to satisfy the "medically determinable" requirement. 20 C.F.R. §§ 416.908; Social Security Ruling 96-4p, 1996 WL 374187, at *1; Social Security Ruling 96-3p, 1996 WL 374181, at *2. Thus, symptoms and subjective complaints alone are not sufficient to establish the existence of a "medically determinable" physical or mental impairment. Social Security Ruling 96-4p, 1996 WL 374187, at *1.

It bears mentioning that "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the [Commissioner] to make a disability determination, rests with the claimant." Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 404.1512, 404.1513, 416.912, 416.913). Further, the regulations provide Administrative Law Judges with the discretion to refer a claimant to a consultative specialist when the claimant's medical sources do not provide sufficient medical evidence to make a determination whether the claimant is disabled. Id. (citing 20 C.F.R. §§ 404.1517, 416.917).

Here, Plaintiff merely testified that he has a seventh grade education. He did not testify that he was enrolled in special education classes. Further, Plaintiff did not submit any records from the schools he attended. As a result, the administrative record is bereft of any evidence

substantiating Plaintiff's claim that he has a learning disability. Under these circumstances, the ALJ did not have a duty under the regulations to order a consultative psychological evaluation.

The ALJ carefully reviewed the record and found that Plaintiff failed to present any objective medical evidence that demonstrated the existence of a learning disability (Tr. 24). Notwithstanding, the ALJ also determined that Plaintiff's purported learning disability did not significantly limit his ability to do one or more basic work activities (Id.). The ALJ then noted that Drs. Perritt and Cutler had reviewed the record and opined that Plaintiff did not have a medically determinable mental impairment (Tr. 24, citing Tr. 72-76, 98-102). The ALJ accorded "great weight" to their opinions (Tr. 24). In sum, the Court concludes that the ALJ's findings at the second step, including the weight accorded to the opinions of Drs. Perritt and Cutler, are supported by substantial evidence in the record and comport with applicable law.

B.

The Court will now address Plaintiff's third argument which challenges the RFC finding (DN 12 citing Finding No. 5). Specifically, Plaintiff disputes whether substantial evidence in the record supports the ALJ's decision to assign "great weight" to the physical restrictions expressed by the non-examining state agency physicians, Drs. Douglas Back and Jack Reed (DN 12-1 PageID # 635). Plaintiff argues these two doctors of unknown specialty merely offered snap shot opinions of his limitations based on a minimal review of the medical records (Id.).

Defendant points out that Drs. Back and Reed are the only medical sources who expressed an opinion regarding Plaintiff's physical restrictions (DN 13 PageID # 646). Defendant explains they are well-versed in the assessment of functionality under the regulations and they reviewed the medical evidence pertaining to the fusion surgery and recovery before expressing their opinions

(Id.).   Defendant contends that substantial evidence in the record supports the ALJ's decision to accord "great weight" to the opinions of Drs. Back and Reed (Id.).

By way of background, the RFC finding is an Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946.   The RFC is based on a consideration of medical source statements and all other evidence in the case record.   20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946; Social Security Ruling 96-5p; Social Security Ruling 96-7p.   Thus, in making the RFC determination an Administrative Law Judge must necessarily assign weight to the medical source statements in the record and consider the subjective allegations of the claimant and make credibility findings.   20 C.F.R. §§ 404.1527(c), 404.1529; Social Security Ruling 96-7p.

Dr. Back reviewed the medical record on May 28, 2014, and made clear that the exertional, postural, and environmental limitations he expressed took into consideration the left ankle fusion surgery that Dr. McBride performed on July 3, 2013 and the medical records regarding Plaintiff's post-operative recovery (Tr. 72-78).   With regard to exertional limitations, Dr. Back opined that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds; and stand and/or walk for a total of about 6 hours in an 8-hour workday (Tr. 76).   As to postural limitations, Dr. Back indicated Plaintiff could frequently climb ramps/stairs; never climb ladders, ropes, and scaffolds; and frequently stoop, kneel, crouch and crawl (Tr. 77).   With regard to environmental limitations, Dr. Back opined that Plaintiff should avoid concentrated exposure to extreme cold, heat, wetness, humidity, vibration, and hazards (Tr. 77-78).

Approximately four months later, on September 15, 2014, Dr. Reed reviewed the medical record and made clear that he considered the left ankle fusion surgery and the medical records regarding Plaintiff's post-operative recovery when he expressed exertional, postural, and environmental limitations (Tr. 98-107). Essentially, Dr. Reed agreed with Dr. Back's exertional and environmental limitations, but he expressed more restrictive postural limitations (Tr. 103-105). Specifically, Dr. Reed opined that Plaintiff could occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; and occasionally stoop, kneel, crouch, and crawl (Tr. 104).

In sum, Drs. Back and Reed are the only medical sources who expressed an opinion regarding Plaintiff's physical restrictions. Thus, the administrative record does not contain a medical opinion expressing more severe exertional, postural, and environmental limitations than those expressed by Dr. Reed.

In pertinent part, the ALJ's decision reads:

> As for the opinion evidence, State agency medical consultants, Douglas Back, M.D., and Jack Reed, M.D., gave opinions in May and September 2014, respectively, each stating that the claimant had the residual functional capacity to perform light work, with postural and environmental limitations due to his left ankle fusion (Exhibit 1A, 2A, 7A, and 8A). Although these physicians were non-examining, these experts are well-versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act and Regulations. Further, their opinions are consistent with the objective medical evidence, such as a left ankle fusion in July 2013 (Exhibit 4F/4) and subsequent decreased sensation (Exhibit 19 F/8-10), decreased range of motion (Exhibit 25/9), and left leg weakness (Exhibit 20 5F/9). For these reasons, their opinions are given great weight.

(Tr. 28).

In response to Plaintiff's assertion about a lack of evidence regarding the specialty of Drs. Back and Reed, the regulations provide that "[s]tate agency medical and psychological consultants . . . are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). Further, Plaintiff has not submitted a medical opinion from any treating source rebutting the exertional, postural, and environment limitations expressed by Drs. Back and Reed. Thus, Plaintiff seems to have given into the temptation of second guessing their opinions based on his lay interpretation of the treating physicians' medical records.

The ALJ considered the appropriate factors and provided good reasons for assigning great weight to the exertional, postural and environmental limitations expressed by Drs. Back and Reed. *See* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6); <u>Gayheart</u>, 710 F.3d at 376. Further, because the ALJ found their opinions are consistent with the record, those opinions represent substantial evidence to support the ALJ's RFC. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); Social Security Ruling 96-6p, 1996 WL 374180, at *2, 3; <u>Atterbery v. Sec'y of Health & Human Servs.</u>, 871 F.2d 567, 570 (6th Cir. 1989). In sum, the ALJ's findings addressing the weight assigned to the opinions of Drs. Back and Reed are supported by substantial evidence in the record and comport with applicable law.

## C.

The Court will now address Plaintiff's first and fifth arguments which also challenge the ALJ's RFC assessment in Finding No. 5 (DN 12). Plaintiff argues substantial evidence does not support the ALJ's finding that his severe left ankle impairment allowed him to perform light work (DN 12-1 PageID # 629-32). Additionally, Plaintiff argues the ALJ erred in failing to accept his

testimony as fully credible and in failing to state sufficient reasons for discounting his credibility (DN 12-1 PageID # 637-38). Plaintiff contends when the medical evidence and his statements about the degree of pain and limitation imposed by the left ankle condition are considered together they demonstrate he was limited to performing, at most, sedentary work since July 1, 2011 (Id. PageID # 629-32, 637-38). Plaintiff claims that such an RFC should have resulted in a fully favorable decision under the Grid Rules at step five in the sequential evaluation process (Id.). Plaintiff also claims the ALJ's credibility determination is the product of misconstruing his testimony about his level of activities (Id.). Further, asserts Plaintiff, the ALJ erred in her determination of whether his severe impairments, in combination or alone, would render him disabled (Id.).

Defendant asserts that the ALJ properly evaluated the severity and limiting effects of Plaintiff's left ankle impairment (DN 13 PageID # 644-48). Defendant argues the ALJ's findings regarding this condition prior to and after the surgery are supported by objective medical evidence in the record (Id.). Further, Defendant points out that the medical record shows Plaintiff failed to follow Dr. McBride's post-surgical advice to walk on his left foot as "much as possible" to avoid contracture of his forefoot obtain the rocker-bottom shoe that the surgeon, Dr. McBride, prescribed to aid Plaintiff's ability to walk on his left foot (Id.).

In the previous section the Court concluded that the ALJ's findings addressing the weight assigned to the opinions of Drs. Back and Reed are supported by substantial evidence in the record and comport with applicable law. Additionally, because the ALJ found their opinions are consistent with the record, those opinions represent substantial evidence to support the ALJ's RFC. Thus, all that remains is Plaintiff's challenge to the ALJ's credibility finding with regard to

his subjective complaints and the question of whether the ALJ's RFC addressed the combined effect of Plaintiff's impairments.

In assessing a claimant's residual functional capacity the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make credibility findings.   20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 96-7p.   A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged.   20 C.F.R. §§ 404.1529(a), 416.929(a).   In determining whether a claimant suffers from debilitating pain and other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986), applies.   First the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition.   If there is, then the Administrative Law Judge must determine:   "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain."   Id.

Here, the ALJ examined the record and concluded there was objective medical evidence of two underlying conditions: a left cataract and status post left ankle fusion (Tr. 22).   The ALJ then determined that the objectively established medical conditions were not of such severity that they could reasonably be expected to produce the alleged disabling pain and other claimed symptoms (Tr. 26-29).   Therefore, the ALJ considered other information and factors that may be relevant to the degree of pain and other symptoms alleged (Id.).   *See* 20 C.F.R. §§ 404.1529(c)(3),

416.929(c)(3). For example, the ALJ considered Plaintiff's level of daily activity in assessing his subjective complaints regarding pain and other symptoms (Id.). 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); Blacha v. Sec'y of Health & Human Servs., 927 F.2d 228, 231 (6th Cir. 1990) (As a matter of law, the Administrative Law Judge may consider household and social activities in evaluating complaints of disabling pain.). The ALJ noted Plaintiff testified that on a typical day his daily activities include feeding his own dogs and then riding his bike three blocks to his mother's home to help with her household chores that include washing her diapers, cooking for her, and mowing her yard with a push mower (for 15 minutes at a time) (Tr. 26). Contrary to Plaintiff's assertion, the ALJ provided an accurate summary of Plaintiff's testimony about his typical day (*compare* Tr. 26 with Tr. 55-61).

The ALJ appropriately considered the frequency that Plaintiff sought treatment for both conditions in assessing Plaintiff's subjective complaints (Tr. 26-29). *See* 20 C.F.R. §§ 404.1529(c)(3)(v) and 416.929(c)(3)(v). Further, the ALJ considered the extent to which there were conflicts between Plaintiff's statements and the rest of the evidence in the record (Id.). For example, the ALJ noted that despite alleging his disability began on July 1, 2011, due to his left ankle impairment, the medical evidence indicated Plaintiff's first significant medical treatment for the condition occurred in January 2012 (Tr. 28, citing Tr. 346-48). Additionally, the ALJ observed that Plaintiff's "testimony was not entirely consistent with the alleged severity, as he testified he could ride a bike, even if for only three blocks, and he could use a push mower for his lawn, even if for only fifteen minutes" (Tr. 28). Moreover, the ALJ noted that Plaintiff's testimony about seeing very poorly, with blurriness, and he could hardly see out of his right eye was inconsistent with vision testing on June 7, 2012 that suggested fairly normal visual acuity (*see*

Tr. 26, 28, 439, 482).   In sum, the ALJ recognized instances where Plaintiff's testimony was not entirely consistent with the degree of pain and limitation alleged.   Contrary to Plaintiff's assertion, the ALJ accurately interpreted Plaintiff's testimony about the level of his activities.

The ALJ found from the medical record and Plaintiff's testimony that Plaintiff does not suffer pain to the extent he testified.   In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ to resolve the issue of Plaintiff's credibility.   Since tolerance of pain and other symptoms is a highly individualized matter, and a determination of disability based on pain depends, of necessity, largely on the credibility of the claimant, the conclusion of the Administrative Law Judge, who has the opportunity to observe the claimant's demeanor, "should not be discharged lightly."   Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984) (citing Beavers v. Sec'y of Health, Educ. & Welfare, 577 F.2d 383 (6th Cir. 1978)).   The undersigned concludes that the ALJ's findings regarding Plaintiff's credibility are supported by substantial evidence and fully comport with applicable law.   See 20 C.F.R. §§ 404.1529, 416.929.

Additionally, the Court has carefully reviewed the record and concludes that the ALJ did consider the combined effects of Plaintiff's physical impairments in the RFC determination (Tr. 26-28).   Therefore, the ALJ's RFC determination is supported by substantial evidence in the record and comports with applicable law.

## D.

At the fifth step, the ALJ relied on the vocational expert's testimony when she found that prior to April 1, 2015, considering Plaintiff's age, education, work experience, and RFC there were jobs that existed in significant numbers in the national economy that he could have performed (Tr.

30, Finding No. 10). More specifically, the ALJ relied on the vocational expert's testimony that given all of these factors the hypothetical individual would have been capable of work as a mail sorter or mail clerk (Dictionary of Occupational Titles "DOT" code 209.687-026) and there are approximately 142,000 such jobs in the national economy; a produce sorter (DOT code 529.687-186) and there are approximately 109,000 such jobs in the national economy; and a small products assembler (DOT code 706.684-022) and there are approximately 324,000 such jobs in the national economy (Tr. 30, 67-68).

1. Plaintiff's Argument

Plaintiff asserts that the vocational expert's testimony does not constitute substantial evidence to support Finding No. 10 because it is based on job descriptions in the DOT that are obsolete (DN 12, DN 12-1 PageID #632-34). Plaintiff explains that the mail sorter/mail clerk description in the DOT was last updated in 1987, the produce sorter description was last updated in 1981, and the small products assembler was last updated in 1979 (Id.). Plaintiff indicates that the Department of Labor now uses the Occupational Information Net (O*NET) instead of the outdated DOT (Id.). Plaintiff points out that the O*NET does not even identify the small products assembler job when the DOT code for that job is searched on the crosswalk option in O*NET (Id.). Plaintiff points out, when the DOT codes for mail sorter/mail clerk and produce sorter are searched on the crosswalk option in O*NET, the current job descriptions and SVP levels for these jobs are completely different from the vocational expert's testimony (Id.). For example, Plaintiff explains, the O*NET descriptions indicate a "considerable amount" of climbing, lifting, balancing, walking, and stooping which is inconsistent with the restrictions in the ALJ's RFC and would, therefore, preclude him from performing these two jobs (Id.). Plaintiff argues based on

17

the DOT's obsolescence and the fact that the current summaries provided by O*NET are so contradictory, the Court should find that substantial evidence does not support the vocational expert's testimony regarding these jobs (Id.).

Alternatively, Plaintiff asserts that in response to the second hypothetical question, which accurately represented his true limitations, the vocational expert opined that all work at the light level would be precluded (Id.). Plaintiff reasons that he would therefore be limited to sedentary work which given his age, education, and prior work experience would result in a finding of disabled under the Grid Rules (Id.).

2. Defendant's Argument

Defendant contends that the vocational expert's testimony constituted substantial evidence supporting the ALJ's determination that Plaintiff was capable of performing work existing in significant numbers in the national economy (DN 13 PageID # 650-52). Defendant asserts that Plaintiff's reliance on the O-NET is misplaced because there is no regulation or ruling that requires the vocational expert's testimony be consistent with information from that source (Id.). Defendant points out that "Social Security Ruling 00-4p requires that an ALJ resolve inconsistencies between a vocational expert's testimony and information in the DOT (and its companion publication, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*), but it makes no mention of the O*NET publication" (Id. PageID # 651, s*ee* Social Security Ruling (SSR) 00-40; 20 C.F.R. §§ 404.1566(d), 416.966(d); *but see* Cunningham v. Astrue, 360 F. App'x 606, 615 (6th Cir. 2010) ("While the Social Security Commissioner does take administrative notice of the [DOT] when determining whether jobs exist in the national economy, 20 C.F.R. § 404.1566(d)(1), common sense dictates that when such

descriptions appear obsolete, a more recent source of information should be consulted.")).

Defendant asserts that "[w]hile the Sixth Circuit has noted that particular DOT job descriptions may have become obsolete, it 'did not hold that the DOT is an unreliable or out-of-date source'" (Id. s*ee* Horsley v. Comm'r of Soc. Sec., No. 1:11-CV-703, 2013 WL 980315, at *3 (S.D. Ohio Mar. 13, 2013)).   Defendant argues that Plaintiff has failed to show the information contained in the DOT for the specified occupations is obsolete (Id.).   At most, contends Defendant, Plaintiff offers evidence from an alternative vocational source, and it was the ALJ's prerogative to rely on the testimony of the vocational expert (Id. *see* Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004) ("As long as substantial evidence supports the Commissioner's decision, we must defer to it, 'even if there is substantial evidence to support an opposite conclusion . . .'") quoting Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003)).

Alternatively, Defendant asserts that Plaintiff failed to raise these concerns during the administrative hearing (Id. PageID # 651-52).   Defendant argues "[u]nder such circumstances, the ALJ was under no duty to conduct further interrogation of the vocational expert" (Id. *see* Martin v. Comm'r of Soc. Sec., 170 F. App'x 369, 374 (6th Cir. 2006) ("Nothing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.")).

    3.   Discussion

       a.   SSR 00-4p

The purpose of this policy ruling is to emphasize that before deciding whether a vocational expert's testimony supports a disability determination, Administrative Law Judges must identify and obtain a reasonable explanation for any conflicts between the occupational evidence provided

by the vocational expert and information in the DOT, including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO). SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000); Martin, 170 F. App'x at 374. In Martin, the Sixth Circuit was addressing a conflict between the vocational expert's testimony and the Specific Vocational Preparation ratings (SVPs) of two positions identified in the DOT. 170 F. App'x at 374. Here, the Court is not dealing with a conflict between occupational evidence provided by the vocational expert and information in the DOT. Instead, the Court is dealing with the reliability of the vocational expert's evidence in light of his dependence on three occupational descriptions in the DOT that were nearly 29, 35 and 37 years old. SSR 00-4p's plain language demonstrates why it is inapplicable to this situation. The Agency published the Ruling to address conflict between the DOT and vocational experts, not to remedy obsolete and therefore incorrect information in the DOT itself. As a result, the Court concludes that Defendant's attempt to rebut Plaintiff's argument with SSR 00-4p and the holding in Martin, 170 F. App'x at 374 is misguided.

b. Reliability of the vocational expert's testimony

At the fifth step in the sequential evaluation process, the Commissioner has the burden of demonstrating that a "significant" number of jobs exist in the local, regional and national economies that the claimant can perform, given his residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v) and (g); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). Essentially, the Commissioner can satisfy this burden in one of two ways. When a claimant's age, education, previous work experience, and residual functional capacity coincide with all of the criteria of a

particular Grid Rule in Appendix 2 of the regulations, referred to as the medical-vocational guidelines, the Commissioner may rely on that Grid Rule to meet this burden. 20 C.F.R. §§ 404.1569, 416.969; Grid Rule 200.00; <u>Born v. Sec'y of Health & Human Servs.</u>, 923 F.2d 1168, 1174 (6th Cir. 1990);<u>Moon</u>, 923 F.2d at 1181. However, when a claimant's residual functional capacity does not coincide with the criteria of a particular Grid Rule, the Commissioner is limited to using the Grid Rule as a framework in the decision making process and must make a non-guideline determination based on the testimony of a vocational expert. 20 C.F.R. § 404.1566(e); <u>Born</u>, 923 F.2d at 1174; <u>Varley v. Sec'y of Health & Human Servs.</u>, 820 F.2d 777, 779 (6th Cir. 1987); <u>Kirk v. Sec'y of Health & Human Servs.</u>, 667 F.2d 524, 531, 535 (6th Cir. 1981), <u>cert. denied</u>, 461 U.S. 957 (1983).

Here, the ALJ found that Plaintiff's residual functional capacity did not coincide with the criteria of Grid Rule 202.11 because Plaintiff could not perform a full range of light work (Tr. 30). Therefore, the ALJ used Grid Rule 202.11 as a framework in the decision making process and, in Finding No. 10, made a non-guideline determination based on the vocational expert's testimony (Tr. 30, 67-68). Pursuant to SSR 00-4p, the ALJ confirmed that the vocational expert's testimony was consistent with the information contained in the DOT (Tr. 31, 68-69).

The Sixth Circuit has made clear that there is no "magic number" that qualifies as "significant" for the purposes of satisfying this prong of the disability inquiry. <u>Hall v. Bowen</u>, 837 F.2d 272, 275 (6th Cir. 1988). Instead, the Court must make a fact-specific inquiry that is guided by common sense:

> We are not blind, however, to the difficult task of enumerating exactly what constitutes a "significant number." We know that we cannot set forth one special number which is to be the boundary between a "significant number" and an insignificant number of

> jobs. . . . A judge should consider many criteria in determining
> whether work exists in significant numbers, some of which might
> include: the level of claimant's disability; *the reliability of the*
> *vocational expert's testimony*; the reliability of the claimant's
> testimony; the distance claimant is capable of traveling to engage
> in the assigned work; the isolated nature of the jobs; the types and
> availability of such work, and so on. The decision should
> ultimately be left to the trial judge's common sense in weighing
> the statutory language as applied to a particular claimant's factual
> situation.

Id. (emphasis added). Here, Plaintiff challenges the reliability of the vocational expert's testimony by asserting it was based on obsolete occupational descriptions in the DOT.

The vocational expert based her testimony on three job descriptions contained in the DOT, a document published by the United States Department of Labor ("DOL") that was last updated in 1991.[2] The regulations provide that the Commissioner "will take administrative notice of reliable job information available from various governmental and other publications." 20 C.F.R. §§ 404.1566(d), 416.966(d); Social Security Ruling 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). The regulations include the DOT within their non-exhaustive list of examples of sources from which reliable job information is available. 20 C.F.R. §§ 404.1566(d)(1)-(5), 416.966(d)(1)-(5); *see* Wennersten v. Colvin, No. 12-cv-783-bbc, 2013 WL 4821474, at * (W.D. Wis. Sept. 10, 2013) ("the list is not exclusive"). Thus, a vocational expert may base his testimony on job descriptions in the DOT. However, the Sixth Circuit, albeit in an unpublished opinion, has made the following cautionary statement: "*common sense dictates* that when such descriptions appear obsolete, a more recent source of information should be consulted." Cunningham v. Astrue, 360 F. App'x 606, 615 (6th Cir. 2010) (emphasis added).

---

2 https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTSPEC.HTM

At the time of Plaintiff's administrative hearing before the ALJ, more current occupational descriptions were available. Specifically, the DOL replaced the DOT with O*NET, a database that is continually updated based on data collection efforts that began in 2001.[3] *See* Cunningham, 360 F. App'x at 616; Johnson v. Berryhill, No. 4-16-CV-00106-HBB, 2017 WL 245326, *8 (W.D. Ky. June 6, 2017). Thus, like the Sixth Circuit in Cunningham, this Court will compare the job descriptions in the DOT with those set forth in O*NET to determine whether the vocational expert based her testimony on obsolete job descriptions.

The DOT description for the first job reads as follows:

> **209.687-026 MAIL CLERK (clerical) alternate titles: mailroom clerk; mail sorter; postal clerk**
>
> Sorts incoming mail for distribution and dispatches outgoing mail: Opens envelopes by hand or machine. Stamps date and time of receipt on incoming mail. Sorts mail according to destination and type, such as returned letters, adjustments, bills, orders, and payments. Readdresses undeliverable mail bearing incomplete or incorrect address. Examines outgoing mail for appearance and seals envelopes by hand or machine. Stamps outgoing mail by hand or with postage meter. May fold letters or circulars and insert in envelopes [FOLDING-MACHINE OPERATOR (clerical) 208.685-014]. May distribute and collect mail. May weigh mail to determine that postage is correct. May keep record of registered mail. May address mail, using addressing machine [ADDRESSING-MACHINE OPERATOR (clerical) 208.582-010]. May be designated according to type of mail handled as Mail Clerk, Bills (clerical).
>
> *GOE: 07.05.04 STRENGTH: L GED: R3 M1 L2 SVP: 2 DLU: 87*

DOT (1991), *available at* http://www.oalj.dol.gov (follow "DOT" hyperlink; then follow "Clerical and Sales Occupations: 201.162-010 to 219.362-046" hyperlink). The definition trailer that follows the occupational description indicates "STRENGTH: L" which is light work; "SVP:2"

3 https://www.onetcenter.org/dataCollection.html

which is "[a]nything beyond short demonstration up to and including 1 month" of specific vocational preparation; and "DLU: 87" which means the description was last updated is 1987. [4]

The DOT Crosswalk Search Option on O*NET reveals that the mail sorter or mail clerk (DOT code 209.687-026) occupation is now designated "Mail Clerks and Mail Machine Operators, Except Postal Service" (O*NET 43-9051-00).[5] The O*NET description reads as follows:

> Prepare incoming and outgoing mail for distribution. Use hand or mail handling machines to time stamp, open, read, sort, and route incoming mail; and address, seal, stamp, fold, stuff, and affix postage to outgoing mail or packages. Duties may also include keeping necessary records and completed forms.

https://www.onetonline.org/link/summary/43-9051.00. Notably, the "Job Zone" section of the O*NET description lists a higher SVP range (4.0 to < 6.0) and indicates that "[t]hese occupations usually require a high school diploma." [6] The "Work Activities" section of the O*NET description indicates "[p]erforming physical activities that require considerable use of your arms and moving your whole body, such as climbing, lifting, balancing, walking, stooping and handling of materials."[7] The O*NET job description suggest there have been changes to the job since the DOT description was updated in 1987. More importantly, the O*NET job description seems to indicate that Plaintiff, who only has a seventh grade education, may not be qualified to perform the job. Thus, while the general job descriptions are similar, there are differences between what is set

---

4 https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM

5 https://www.onetonline.org/link/summary/43-9051.00

6 https://www.onetonline.org/link/summary/43-9051.00 #JobZone

7 https://www.onetonline.org/link/summary/43-9051.00#WorkActivities

forth in the DOT and O*NET with regard to SVP, education, and physical activities. These differences suggest that the nearly 29 year old job description in the DOT may be obsolete. However, only a vocational expert is qualified to address this issue and render an opinion regarding whether Plaintiff is capable of performing this job. Because of what appears to be substantial differences between the information in the DOT and O*NET, the vocational expert's dependence on the DOT listing alone does not warrant a presumption of reliability.

The next DOT job description reads as follows:

**529.687-186  SORTER,  AGRICULTURAL  PRODUCE (agriculture; can. & preserv.; wholesale tr.) alternate titles: sorter, food products**

Sorts agricultural produce, such as bulbs, fruits, nuts, and vegetables: Segregates produce on conveyor belt or table, working as crewmember, according to grade, color, and size, and places produce in containers or on designated conveyors. Discards cull (inferior or defective) items and foreign matter. Bunches, ties, and trims produce, such as asparagus, carrots, celery, and radishes. Picks out choice produce to be used as cappers (top layers on marketing containers). Packs produce in boxes, barrels, baskets, or crates for storage or shipment [PACKER, AGRICULTURAL PRODUCE (agriculture) 920.687-134]. May be designated according to work performed as Apple Sorter (agriculture; can. & preserv.; wholesale tr.); Asparagus Grader And Buncher (agriculture); Capper Picker (agriculture; wholesale tr.); Citrus-Fruit-Packing Grader (agriculture; wholesale tr.); Cull Grader (agriculture; wholesale tr.); Potato Grader (agriculture; wholesale tr.). May be designated: Asparagus Sorter (agriculture; can. & preserv.; wholesale tr.); Banana Grader (agriculture; wholesale tr.); Bulb Sorter (agriculture); Cherry Sorter (agriculture; can. & preserv.; wholesale tr.); Cranberry Sorter (agriculture; wholesale tr.); Fig Sorter (agriculture; can. & preserv.; wholesale tr.); Flower Grader (agriculture); Fruit Sorter (agriculture; can. & preserv.; wholesale tr.); Hop Sorter (agriculture); Nut Sorter (agriculture); Peach Sorter (agriculture; can. & preserv.; wholesale tr.); Potato Sorter (agriculture; wholesale tr.); Seed Sorter (agriculture); Tomato Grader (wholesale tr.); Vegetable Sorter (agriculture; can. & preserv.; wholesale tr.); Mushroom

Sorter-Grader (can. & preserv.); Trimmer-Sorter (can. & preserv.); Sorter-Grader (can. & preserv.); Raspberry Checker (can. & preserv.).

GOE: 03.04.01 STRENGTH: L GED: R1 M1 L1 SVP: 2 DLU: 81

DOT (1991), *available at* http://www.oalj.dol.gov (follow "DOT" hyperlink; then follow "Processing Occupations: 529.685-142 to 550.665-022" hyperlink). The definition trailer indicates light work, a GED (General Education Development) of R1 M1 L1, and an SVP of 2. Appendix C to the DOT defines a GED of R1 as the ability to perform simple one- or two-step instructions; M1 as the ability to perform basic math skills; and L1 as the ability to perform basic reading, writing, and speaking skills.[8] The trailer indicates the job description was last updated in 1981.

The DOT Crosswalk Search Option on O*NET reveals that the produce sorter (DOT code 529.687-186) occupation is now designated "Graders and Sorters, Agricultural Products" (O*NET 45.687-186).[9] The O*NET description reads, "[g]rade, sort, or classify unprocessed food and other agricultural products by size, weight, color, or condition."[10] The "Job Zone" section of the O*NET description indicates an SVP range below 4.0 and explains that "[l]ittle or no previous work-related skill, knowledge, or experience is needed for these occupations."[11] This section also indicates that "[s]ome of these occupations may require a high school diploma or GED

---

8 https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM

9 https://www.onetonline.org/link/summary/45-2041.00

10 Id.

11 https://www.onetonline.org/link/summary/45-2041.00#JobZone

certificate." [12]   The "Work Activities" section to the O*NET description indicates that "[p]erforming physical activities that require considerable use of your arms and moving your whole body, such as climbing, lifting, balancing, walking, stooping and handling of materials."[13] Thus, although there appear to be similarities, there are differences between what is set forth in the DOT and O*NET with regard to SVP, education, and physical activities.   These differences suggest that the nearly 35 year old job description in the DOT may be obsolete.   However, only a vocational expert is qualified to address this issue and render an opinion regarding whether Plaintiff is capable of performing this job.   While it is a close call, the above mentioned changes are sufficient to raise a question as to whether the vocational expert's dependence on the DOT listing alone warrants a presumption of reliability.

The third DOT job description reads as follows:

**706.684-022  ASSEMBLER,  SMALL  PRODUCTS  I  (any industry) alternate titles: bench assembler**

Performs any combination of following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors: Positions parts in specified relationship to each other, using hands, tweezers, or tongs.  Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools.  Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker.  Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line.  May be assigned to different work stations as

---

12 Id.

13 https://www.onetonline.org/link/summary/45-2041.00#WorkActivities

> production needs require or shift from one station to another to reduce fatigue factor. May be known according to product assembled.

> GOE: 06.04.23 STRENGTH: L GED: R2 M1 L1 SVP: 2 DLU: 79

DOT (1991), *available at* http://www.oalj.dol.gov (follow "DOT" hyperlink; then follow "Benchwork Occupations: 700.130-010 to 713.684-018" hyperlink). The definition trailer indicates light work, a GED of R2 M1 L1, an SVP of 2, and the description was last updated in 1979. Appendix C to the DOT defines a GED of R2 as the ability to carry out detailed instructions.[14] The DLU indicates the job description was last updated in 1979.

The Court entered the small products assembler DOT code **706.684-022** on the DOT Crosswalk Search Option for O*NET but the search did not reveal a comparable job description.[15] The Court also utilized O*NET's Occupation Search, Find Occupations, and Advanced Search options but did not find a similar job description. In light of the fact that the DOT job description is nearly 37 years old and the description relied on by the vocational expert was not found on O*NET, the Court concludes the vocational expert's reliance on the DOT job description alone does not warrant a presumption of reliability.

Thus, the discrepancies between the DOT and O*NET present sufficient doubt as to the reliability of the vocational expert's testimony to warrant a conclusion that the ALJ's step five determination (Tr. 30, Finding No. 10) was not supported by substantial evidence. After all, "[i]f the only jobs that the applicant is physically and mentally capable of doing no longer exist in the American economy (such as pin setter, phrenologist, leech collector, milkman, pony express rider,

---

14 https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM

15 https://www.onetonline.org/crosswalk/DOT?s=706.684-022&g=Go

and daguerreotypist), the applicant is disabled from working, and likewise, as a realistic matter, if there is an insignificant number of such jobs." Herrmann v. Colvin, 772 F.3d 1110, 1113 (7th Cir. 2014). Notably, however, the undersigned is not concluding that these positions are obsolete, nor that they do not exist in significant numbers. Rather, this is a recognition that Plaintiff has created sufficient doubt to merit remand so that a vocational expert can determine whether these positions, as performed in the modern economy, were still available to the Plaintiff, prior to April 1, 2015, given his age, work experience, education, and RFC.

In light of the above conclusion, the final decision of the Commissioner will be reversed and this matter will be remanded, pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for reconsideration of whether the DOT listings, specifically the mail sorter or mail clerk, produce sorter, and small products assembler descriptions, were reliable in light of the economy as it existed at the time of the hearing before the ALJ. *See* Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 175 (6th Cir. 1994) (sentence four of 42 U.S.C. § 405(g) authorizes a post judgment remand).

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **REVERSED.**

**IT IS FURTHER ORDERED** that this matter is **REMANDED**, pursuant to 42 U.S.C. §
405(g), to the Commissioner for further proceedings.

Copies:          Counsel